IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

HALLIBURTON ENERGY SERVICES, INC.,

       Plaintiff,

v.

WEATHERFORD INTERNATIONAL, INC.

     Defendant.

CIVIL ACTION NO. 3:10-CV-02595-N
(Severed from 3:07-CV-2144-N)


Jury Demanded

**DEFENDANT WEATHERFORD INTERNATIONAL, INC.'S
UNOPPOSED MOTION FOR LEAVE TO SUPPLEMENT ITS
<u>PATENT INVALIDITY CONTENTIONS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

TABLE OF EXHIBITS ......................................................................................................... iii

I.     SUMMARY OF ARGUMENT ................................................................................... 1

II.    FACTUAL BACKGROUND ...................................................................................... 1

       A.    The Halliburton Sales and Service Catalog and Halliburton's Magnesium Plastic
             Coated Tools ................................................................................................ 3

       B.    The Brown Oil Tools, Inc. General Catalog, 1958-1959 .......................................... 5

       C.    U.S. Patent No. 3,298,440 ............................................................................... 6

III.   WEATHERFORD HAS GOOD CAUSE TO SUPPLEMENT ITS INVALIDITY
       CONTENTIONS ....................................................................................................... 7

       A.    Standards Applicable to Weatherford's Motion for Leave to Supplement Its
             Invalidity Contentions ................................................................................... 7

       B.    Consideration Of The Relevant Factors Compels The Conclusion That
             Weatherford Has Good Cause to Supplement Its PICs ........................................... 9

             1.    Weatherford Has Diligently Searched For Invalidating Prior Art References
                   Pertaining to Slip Supports, Slip Wedges, and Retaining Means ..................... 9

             2.    Weatherford's Supplemental PICs Contain Crucial Defenses to Halliburton's
                   Infringement Contentions That Were Unavailable Before Claim
                   Construction ............................................................................................ 10

             3.    Weatherford's Supplemental PICs Will Not Cause Prejudice to
                   Halliburton ............................................................................................. 11

             4.    A Continuance Is Not Necessary ................................................................. 13

IV.    CONCLUSION ....................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**

*Arbitron, Inc. v. Int'l Demographics Inc.*,
   No. 2:06-CV-434, 2008 U.S. Dist. LEXIS 87345, at *3-4 (E.D. Tex. Oct. 29, 2008) .............. 8

*Cummins-Allison Corp. v. SBM Co., Ltd.*,
   No. 9:07-CV-196, 2009 U.S. Dist. LEXIS 22114, at * 4 (E.D. Tex. Mar. 19, 2009) ............... 9

*IXYS Corp. v. Advanced Power Tech., Inc.*,
   No. C 02-03942, 2004 U.S. Dist. LEXIS 10934, at *8 (N.D. Cal. Jun 15, 2004) .................... 9

*MacLean-Fogg Co. v. Eaton Corp.*,
   No. 2:07-CV-472, 2008 U.S. Dist. LEXIS 78301, at *7 (E.D. Tex. Oct. 6, 2008) ................. 16

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355, 1366 (Fed. Cir. 2006)....................................................................................... 8

*Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006) ................................ 9

**Statutes**

35 U.S.C. § 102............................................................................................................... 4, 7, 10

35 U.S.C. § 103........................................................................................................................ 10

## <u>TABLE OF EXHIBITS</u>

Exhibit A:      1966 Halliburton Sales and Service Catalog

Exhibit B:      U.S. Patent No. 5,224,540

Exhibit C:      1962 Halliburton Sales and Service Catalog

Exhibit D:      1968 Halliburton Sales and Service Catalog

Exhibit E:      Brown Oil Tools, Inc. General Catalog 1958-1959

Exhibit F:      U.S. Patent No. 2,822,875

Exhibit G:      U.S. Patent No. 3,298,440

DM_US:23629980_1

## I.      SUMMARY OF ARGUMENT

Defendant Weatherford International, Inc. ("Weatherford") respectfully requests the Court's leave to supplement its Patent Invalidity Contentions ("PICs") based on newly-discovered prior art references pursuant to Miscellaneous Order No. 62 ("MO 62") R.3-7. Primarily, the newly discovered prior art references were not known to Weatherford despite diligence in seeking out the same.  Weatherford re-evaluated one previously cited prior art reference in light of the Court's July 8, 2010 Claim Construction Order ("Order," Docket Entry "DE" 146) while preparing for depositions of key Halliburton witnesses and appreciated the significance of this reference for existing invalidity contentions.  Weatherford also identified three new prior art references during its search for applicable prior art.   Weatherford's supplemental patent invalidity contentions are crucial to its defense of Halliburton Energy Services, Inc.'s ("Halliburton's") infringement contentions and would not cause any prejudice to Halliburton.   Moreover, discovery is ongoing until June 30, 2011, allowing both parties to consider fully the supplemental contentions.  Accordingly, Weatherford has shown good cause to supplement its PICs and this Court should grant Weatherford leave to do so.

Finally, Halliburton has indicated that it does not oppose Weatherford supplementing its invalidity contentions with the references discussed herein.

## II.     FACTUAL BACKGROUND

On July 8, 2010, this Court issued an Order construing the asserted claims of U.S. Patent No. 5,224,540 ("the '540 patent").  Order, DE 146.  The Court held that "slip means" was a means-plus-function limitation and defined the related structure to include "(1) a slip wedge positioned around the central mandrel; (2) a plurality of slips disposed in an initial position around the mandrel; (3) retaining means for holding the slips in the initial position; and (4) a slip

1

support on the opposite side of the slips from the wedge." *Id.* at 9, 11 (footnote omitted). The Court further construed "retaining means" to include a "retaining band, retaining rings, including integrally formed rings, and shear pins." *Id.* at 24.

Shortly thereafter, on August 9, 2010 Plaintiff Halliburton filed amended Preliminary Infringement Contentions pursuant to MO 62 R.3-6(a). In response, on August 27, 2010, Weatherford filed its amended PICs pursuant to MO 62 R.3-6(b). Weatherford continued diligently to search for any additional invalidating prior art in light of the Court's construction of "slip means" and the Plaintiff's final infringement contentions. Whereas Weatherford's argument in its *Markman* briefing was that the slip itself must be non-metallic, the Court's claim construction Order adopted a broader construction of "slip means" that necessitated continued re-evaluation of hundreds of prior art references.[1] While reviewing prior art and hundreds of thousands of produced documents in preparation for deposing key Halliburton witnesses, Weatherford recognized that one prior art reference took on a new-found significance in invalidity analysis because of the Court's claim construction. Weatherford also discovered three altogether new prior art references while searching for prior art after the Court's claim construction. As such, Weatherford seeks leave of the Court to add the following invalidating prior art references and the invalidating devices contained therein:

(1)     1966 Halliburton Sales and Service Catalog ("the 1966 Catalog")[2];

---

[1] Weatherford's initial prior art searches and analysis were colored by its assertion that "slip means" were merely slips. As such, those searches focused on the use of non-metallic material in the slips themselves. Following the Court's claim construction Order, Weatherford's prior art analysis was broadened to consider whether the slips, the slip supports, the slip wedges, or even the retaining means contained any non-metallic materials.

[2] Although Weatherford relies upon the 1966 Catalog in this Motion, the 1962 Halliburton Sales and Service Catalog ("the 1962 Catalog") and the 1968 Halliburton Sales and Service Catalog ("the 1968 Catalog") provide additional, albeit duplicative, support which will be explained later.

2

(2)     Brown Oil Tools, Inc. General Catalog 1958-1959 ("the Brown catalog"); and

(3)     U.S. Patent No. 2,822,875 ("Brown '875 patent").

Weatherford also seeks leave of the Court to supplement its invalidity contentions relating to a previously cited reference, U.S. Patent No. 3,298,440 ("Current '440 patent"). Weatherford will address the prior art as three general categories: the Halliburton Sales and Service Catalog and the accompanying line of Halliburton magnesium tools with vinyl plastic coating; the Brown catalog tools and the related Brown '875 patent; and, the Current '440 patent.

**A.     The Halliburton Sales and Service Catalog and Halliburton's Magnesium Plastic Coated Tools**

The 1966 Halliburton Sales and Service Catalog discloses three pieces of invalidating prior art manufactured and offered for sale by Halliburton.  The 1966 Catalog advertised a Type DM drillable magnesium alloy bridge plug with various parts partially made of non-metallic material, i.e., several parts are coated in a vinyl plastic.[3]  *See* 1966 Catalog, at 2322-23, 2326 (Exhibit A).   The catalog also advertised a Type WLM wire line magnesium alloy drillable bridge plug.[4]  *See id.* at 2326.  The Type WLM bridge plug also included parts that were partially non-metallic.  *See id.*  Finally, the catalog advertised a Type SDM squeeze packer that is a short drillable magnesium packer with partially non-metallic parts.[5]  *See id.* at 2325.  These downhole tools use a design configuration nearly identical to that of the Halliburton FAS Drill composite

---

[3] The 1966 Catalog discloses the following eighteen catalog numbers for its line of Type DM tools: 802.013, 802.023, 802.033, 802.043, 802.053, 802.063, 802.073, 802.083, 802.123, 802.133, 802.143, 802.153, 802.193, 802.213, 802.243, 802.258, 802.273, and 802.283.  *See* 1966 Catalog, at 2324.

[4] The 1966 Catalog discloses the following six catalog numbers for its line of Type WLM tools with parts coated in vinyl plastic: 803.602, 803.603, 803.604, 803.605, and 803.608.  *See* 1966 Catalog, at 2325.

[5] The 1966 Catalog discloses the following three catalog numbers for its line of Type SDM tools with parts coated in vinyl plastic: 802.003, 802.004, and 802.008.  *See* 1966 Catalog, at 2325.

3

tool. Moreover, the tools use a design configuration that is nearly identical to that of the preferred embodiments in the '540 patent. *See, e.g.,* '540 patent, Fig. 7 (Exhibit B). Under the Court's claim construction Order, the Type DM bridge plug, the Type WLM bridge plug, and the Type SDM squeeze packer are downhole apparatus with a center mandrel, and upper and lower slip means that are at least partially made of a non-metallic metal (vinyl plastic) surrounding a packing means. *See* Order, DE 146, at 11; 1966 Catalog, at 2322-23, 2325-26 (Ex. A); '540 patent, claim 3 (Ex. B). More specifically, the upper and lower slip means are at least partially non-metallic because the slip wedges and the slip supports are partially vinyl plastic. *See id.* Thus, the 1966 Catalog discloses three lines of tools (and at least twenty-seven different devices) that Halliburton has previously manufactured and offered for sale with slip means at least partially made of non-metallic material.[6, 7, 8] The catalog and the associated tools are critical invalidating prior art references that provide Weatherford both 35 U.S.C. §§ 102(a) and 102(b) invalidity defenses.

---

[6] Two additional Halliburton Sales and Service Catalogs, the 1962 Catalog (Exhibit C) and the 1968 Catalog (Exhibit D), lend further support to Halliburton's manufacture and offer for sale of the Type DM, Type WLM, and Type SDM downhole tools employing slip means made partially of non-metallic material. These additional references are duplicative of the 1966 Catalog with the exception of slight differences in product offerings and product lines catalog numbers. Because they are duplicative, Weatherford proposes to add the representative 1966 Catalog to the invalidity chart.

[7] The 1962 Catalog (Ex. C) advertised Type DM, Type WLM, and Type SDM tools. The catalog explicitly states that the DM and WLM tools were coated in vinyl plastic. The 1962 Catalog discloses the following nineteen catalog numbers for its line of Type DM tools: 802.013, 802.023, 802.033, 802.043, 802.053, 802.063, 802.073, 802.083, 802.123, 802.133, 802.143, 802.153, 802.193, 802.213, 802.243, 802.253, 802.258, 802.273, and 802.283. *See* 1962 Catalog, at 2213. The 1962 Catalog discloses the following six catalog numbers for its line of Type WLM tools: 803.602, 803.603, 803.604, 803.605, and 803.608. *See* 1962 Catalog, at 2214. The 1962 Catalog discloses the following three catalog numbers for its line of Type SDM tools: 802.003, 802.004, and 802.008. *See* 1962 Catalog, at 2214.

[8] The 1968 Catalog (Ex. D) advertises Type DM tools that were coated in vinyl plastic. The 1968 Catalog discloses the following nineteen catalog numbers for its line of Type DM tools: 802.013, 802.023, 802.033, 802.043, 802.053, 802.063, 802.073, 802.083, 802.123, 802.133, 802.143, 802.153, 802.193, 802.213, 802.243, 802.258, 802.273, 802.276, and 802.283. *See* 1968 Catalog, at 2218.

### B.       The Brown Oil Tools, Inc. General Catalog, 1958-1959

The Brown Catalog reveals three downhole tools that are invalidating prior art references. Additionally, the Brown '875 patent covers the invalidating prior art in the catalog.  The Brown SOS J-7 Packer teaches a cup type packer with the rubber cup-type seals molded to the slips, and slightly overlapping them.  *See* Brown Catalog, at 896 (Exhibit E).  The Brown Catalog explains that "the large area, 360° slips are molded to these [synthetic rubber] seals and firmly anchored to the seal holder with adequate thickness at the base to retain them."  *Id.*   The same configuration also appears in the Brown DS-8 Dual String Packer and the DS-8-3 upper packer. *Id.* at 912, 914.  In each of the devices, the slips are molded to the rubber seals and are pressure actuated by expansion of the cup seals.  *Id.*   Furthermore, the Brown '875 patent teaches the same configuration as that found in the tools identified in the Brown Catalog.  *See* Brown '875 patent, col. 2, ll. 18-33; col. 3, ll. 55-68; cl. 3, 12, 14 (Exhibit F).  These references all suggest the viability of retaining metallic slips via non-metallic materials such as rubber.  In combination with references teaching the use of the conventional plug design such as that in Figure 2 of the '540 patent, the Brown references would render obvious the use of non-metallic materials as retaining means.  The shape of the rubber seals and the position of the seals with respect to the slips make the seals also function as slip wedges and slip supports.  The positioning of the slips with respect to the seals permits "radial movement of the slip segments coincident with the expansion and contraction of the reduce diameter portions 18b of sealing elements 18."  Brown '875 patent, col. 2., ll. 30-33; *see also id.*, col. 3, ll. 60-64 (explaining the expansion of the sealing elements which "will expand reduced diameter portions 18b on which slip segments 19 are mounted, thereby forcing these segments into anchoring engagement with the interior wall of

5

casing 15.").   As such, the Brown references also render obvious the use of non-metallic materials in the slip means, specifically the slip wedges and slip supports.  These invalidating prior art references provide Weatherford with a critical 35 U.S.C. § 103 invalidity defense.

### C.   U.S. Patent No. 3,298,440

The Current '440 patent (issued January 17, 1967) is an invalidating prior art reference that teaches the use of elastomeric materials between slip segments to retain the slips while the tool is being run in and to allow the slips to expand radially while the tool is being set.  *See* Current '440 patent (Exhibit G), col. 3, ll. 6-10; col. 8, ll. 23-30; cl. 4 (col. 15, ll. 42-58); Figs. 4-5.  The Current '440 tool uses a configuration nearly identical to that of the '540 patent, employing slip means including slip wedges, slip supports, retaining means, and slips.  *Compare* Current '440 patent, Fig. 1 *with* '540 patent, Fig. 7.  The Court's Order construed retaining means in the '540 patent to include a "retaining band, retaining rings, including integrally formed rings, and shear pins."  Order, DE 146, at 24.  Given the Court's construction of slip means to include retaining means, the Current '440 patent discloses a retaining ring or an integrally formed retaining ring that is at least partially made of a non-metallic material (elastomeric material).  *See id.*; Current '440 patent (Ex. G), col. 3, ll. 6-10; Current '440 patent, col. 8, ll. 23-30; Current '440 patent, cl. 4 (col. 15, ll. 42-58); Current '440 patent, Fig. 4.

Additionally, under the Court's claim construction Order, the Current '440 patent may also be said to teach a partially non-metallic slip.  The Court's Order construes "slips" to be "tapered wedge-shaped structures arranged around the surface of the mandrel oriented longitudinally along the axis of the mandrel, where the thick end of the wedge shape is pivotally attached to the slip support, and which optionally have teeth or inserts molded into the outer face

6

of the slips toward the end away from the slip support." Order, DE 146, at 26. The Current '440 patent teaches an "expansible slip member" that is "formed from a plurality of individual sectorial segments which are spaced apart and joined by a plurality of relatively thin elastomeric strips bonded to adjacent segments." Current '440 patent, col. 8, ll. 25-30. Here, again, the slips are at least partially made of non-metallic material (elastomeric material).

Weatherford previously identified the Current '440 patent as invalidating prior art in its August 27, 2010 amended invalidity contentions, citing its teaching of ductile stop bands. The supplemental invalidity contentions that are offered with this Motion offer a similar argument for invalidity by merely adding further substantial support within the previously identified prior art. The Current '440 patent provides additional support for the invalidity of the '540 patent in its use of elastomeric material as either retaining means or slips. Thus, the Current '440 patent provides anticipating prior art that teaches slip means at least partially made of a non-metallic material and offers Weatherford a previously unavailable 35 U.S.C. § 102 invalidity defense.

Accordingly, having discovered three additional categories of invalidating prior art references that arose in light of the Court's construction of "slip means," Weatherford now moves for leave of court to supplement its invalidity contentions.

## III. WEATHERFORD HAS GOOD CAUSE TO SUPPLEMENT ITS INVALIDITY CONTENTIONS

### A. Standards Applicable to Weatherford's Motion for Leave to Supplement Its Invalidity Contentions

7

The Court may grant leave to supplement Patent Invalidity Contentions upon a showing of good cause.[9]   MO 62 R.3-7.   Although no published opinions from this District have construed "good cause" for amendment of patent invalidity contentions, several courts in the Eastern District of Texas have construed their similar Local Patent Rule 3-6(b).  Courts consider four factors in ruling on motions to amend invalidity contentions: "(1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) the potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice."  *Arbitron, Inc. v. Int'l Demographics Inc.*, No. 2:06-CV-434, 2008 U.S. Dist. LEXIS 87345, at *3-4 (E.D. Tex. Oct. 29, 2008).   No one factor predominates in the analysis, but rather, the court in its discretion considers all factors to determine whether good cause exists.  *See id.* at *5 (explaining that diligence is one factor in good cause analysis, but not the "sole or primary factor," and the court retains its discretion to allow amendments when other factors provide good cause).

Local patent rules attempt to balance the right of the parties to develop new information during discovery with the need for certainty in the legal theories of the case.  *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (discussing the purpose of local patent rules in the Northern District of California).  Among two of the foremost goals of local patent rules are (1) ensuring that parties to these complex and time-consuming cases have adequate notice of documents and theories pertinent to infringement and invalidity and (2) preventing a party from ambushing its opponent at the last minute with legal theories or

---

[9] "Good cause for the purposes of this paragraph may include . . . newly discovered prior art references.  A party seeking amendment of the . . . final invalidity contentions must include in its motion to amend a statement that the . . . newly discovered prior art references were not known to that party prior to the motion despite diligence in seeking out the same."  MO 62 R.3-7.

8

damning documents that were previously hidden in a mass of information.  *Cf. Cummins-Allison Corp. v. SBM Co., Ltd.*, No. 9:07-CV-196, 2009 U.S. Dist. LEXIS 22114, at * 4 (E.D. Tex. Mar. 19, 2009) ("The purpose of the Local Rules is to 'further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush.'") (quoting *IXYS Corp. v. Advanced Power Tech., Inc.*, No. C 02-03942, 2004 U.S. Dist. LEXIS 10934, at *8 (N.D. Cal. Jun 15, 2004)).  The emphasis of the patent rules on notice ensures that these rules act as a shield, not as a sword, to protect parties from trial by ambush.  *Cf. Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006) (discussing the notice requirements associated with the Patent Rules and emphasizing their defensive, rather than offensive nature).  The factors for good cause serve to enforce the spirit of these local rules.

> **B.      Consideration Of The Relevant Factors Compels The Conclusion That Weatherford Has Good Cause to Supplement Its PICs**

Weatherford has good cause to supplement its PICs because it has exercised diligence while searching for new prior art references after the Court issued its claim construction Order and it continues to evaluate existing prior art in light of the Court's Order.  The defenses offered by these documents are crucial to Weatherford's case, yet consistent with its previous PICs, and would not cause any prejudice to Halliburton.  Further, because these supplemental PICs will not cause Halliburton any prejudice, a continuance is not necessary.  Moreover, Halliburton does not oppose the addition of the above cited new references.   Accordingly, Weatherford's Motion should be granted.

> **1.      Weatherford Has Diligently Searched For Invalidating Prior Art References Pertaining to Slip Supports, Slip Wedges, and Retaining Means**

9

Weatherford has diligently searched for invalidating prior art references pertaining to slip supports, slip wedges, and retaining means following the Court's claim construction Order.  In part, Weatherford has searched for and identified new prior art.  Weatherford has also diligently reviewed previously identified prior art and documents.  The volume of produced documents stemming from eight years of litigation and reexamination proceedings has made a comprehensive review of all documents and prior art unfeasible.  However, in reviewing documents to prepare for depositions of key Halliburton witnesses, Weatherford has continued to reevaluate prior art in light of the Court's claim construction Order.  Upon discovering potentially new invalidating prior art such as the partially non-metallic tools in the Halliburton Sales and Service Catalogs on Wednesday, January 12, 2011, Weatherford diligently served a request for production the next day on Halliburton requesting associated documents.  Weatherford has not purposefully employed delay tactics in disclosing prior art, allowing Halliburton to be on notice of potentially invalidating references.  Furthermore, Weatherford filed this motion within approximately two weeks of discovering the potentially invalidating references.  Given the challenges associated with complex patent litigation, Weatherford has diligently searched for invalidating prior art references and brought them to the attention of the Plaintiff and the Court.  As such, this factor weighs heavily in favor of granting Weatherford leave to supplement.

> **2.      Weatherford's Supplemental PICs Contain Crucial Defenses to Halliburton's Infringement Contentions That Were Unavailable Before Claim Construction**

As described in detail above, these prior art references raise invalidity defenses under 35 U.S.C. §§ 102 and 103 that were not previously available.  The prior art references found in

10

Weatherford's Supplemental PICs and described in this Motion contain crucial defenses to Halliburton's allegations of patent infringement.  These pieces of prior art were inapplicable prior to the Court's July 8, 2010 claim construction Order, but now fall squarely within the limitations of Halliburton's asserted claims.  The Halliburton Sales and Service Catalog[10] and the associated Halliburton magnesium tools with partially non-metallic parts, i.e., vinyl plastic coating, provide invalidity defenses under 35 U.S.C. § 102.  The Brown Catalog, the Brown '875 patent, and the associated tools provide invalidity defenses under 35 U.S.C. § 103.  Finally, the Current '440 patent provides an invalidity defense under 35 U.S.C. § 102.  Because there can be no infringement of an invalid patent, these additional invalidity defenses are crucial to Weatherford's case.  Accordingly, this factor also weighs heavily in favor of granting Weatherford leave to amend.

### 3.   Weatherford's Supplemental PICs Will Not Cause Prejudice to Halliburton

Halliburton will suffer no prejudice as a result of Weatherford's Supplemental PICs.  Weatherford's Supplemental PICs do not raise any new theories of invalidity, but do provide strong invalidating prior art references to support those existing theories of invalidity.  These Supplemental PICs provide Halliburton ample notice of both the prior art references and the theories of invalidity.  There is still plenty of time remaining in discovery for both parties, with the discovery cut-off not occurring for over five months, on June 30, 2011.  Given the more than adequate time remaining in discovery, the Supplemental PICs provide Halliburton sufficient notice such that it will neither be prejudiced nor blindsided by additional prior art references.

---

[10] As noted previously, Weatherford relies primarily upon the 1966 Catalog; however, the 1962 Catalog and the 1968 Catalog provide largely duplicative support for Weatherford's assertions.

11

Significantly, Halliburton has agreed not to oppose the addition of the four references discussed herein to Weatherford's invalidity contentions.  Thus, prejudice to Halliburton is not an issue.

In any event, in the case of the Halliburton Sales and Service Catalogs, Halliburton suffers no prejudice because the 1966 Catalog comes from Halliburton itself.  Moreover, Halliburton was the manufacturer and seller of these tools.  Halliburton will suffer no prejudice for the inclusion of tools that it manufactured and offered for sale or for the inclusion of the 1966 Catalog that it published.

Similarly, Halliburton will not be prejudiced by the remaining prior art references in the Supplemental PICs.  Weatherford previously identified the Current '440 patent in its Amended PICs.  The Supplemental PICs merely include additional portions of the reference that support Weatherford's theories of invalidity.  Halliburton cannot claim to be prejudiced by a document that has been previously identified in this litigation.  Moreover, to the extent that the additional excerpts within the reference provide any slightly new theories of invalidity, the five remaining months of discovery provide an adequate cure.  As such, Halliburton is not prejudiced by the inclusion of the Current '440 patent in the Supplemental PICs.  Although the Brown Catalog, the Brown '875 patent, and the Brown tools are newly discovered prior art references, Halliburton will suffer no prejudice from their inclusion in the PICs.  Given the notice of these references provided by the Supplemental PICs and the ample time remaining in discovery for the parties, Halliburton has sufficient time to consider and investigate the prior art references and the appurtenant theories of invalidity.

12

Supplementing the PICs at this stage in the litigation serves the overall intent of the patent rules: to identify prior art references and theories of invalidity early enough in the litigation to provide the parties ample time to conduct discovery and to investigate the references and the accompanying theories.

### 4.     A Continuance Is Not Necessary

The "good cause" factor regarding the availability of a continuance is only relevant to the extent that a continuance would cure any potential prejudice.  However, as explained above, Halliburton will suffer no prejudice as a result of Weatherford's supplemental PICs.  In any event, with five months remaining in discovery and eight months remaining until trial, a continuance would be of little value.  Therefore, an analysis of the availability of a continuance is not necessary.  *See MacLean-Fogg Co. v. Eaton Corp.*, No. 2:07-CV-472, 2008 U.S. Dist. LEXIS 78301, at *7 (E.D. Tex. Oct. 6, 2008).

## IV.   CONCLUSION

As shown above, all "good cause" factors weigh in Weatherford's favor.  Weatherford has been diligent in evaluating these newly identified prior art references, and these defenses are crucial to its case.  Moreover, the assertion of these defenses will not cause any prejudice to Halliburton – many of the references were within the possession, control, and knowledge of Halliburton; for the remainder of the references, there is more than adequate time remaining in discovery to address these references.  Accordingly, this Court should grant Weatherford leave to file its Supplemental PICs.


DATED:  February 7, 2011                          Respectfully Submitted,

13

By :___/s/ Stephen H. Cagle_____
    Stephen H. Cagle
      Texas Bar No. 03591900
    Stephen L. Lundwall
      Texas Bar No. 12696980
    Eric S. Schlichter
      Texas Bar No. 24007994
    Howrey LLP
    1111 Louisiana, 25th Floor
    Houston, Texas 77002
    Telephone: (713) 787-1400
    Facsimile: (713) 787-1440

    Robert G. Abrams
      DC Bar No.: 211557
    Gregory Commins, Jr.
      DC Bar No.: 435440
    Howrey LLP
    1299 Pennsylvania Avenue NW
    Washington, DC 2004
    Telephone: (202) 783-0800
    Facsimile: (202) 383-6610

    Local Counsel:
    Elizabeth D. Whitaker
      Texas State Bar No.: 22261500
    Offices of Elizabeth D. Whitaker, Esq.
    5930 Royal Lane
    Dallas, Texas 75230
    Telephone: (214) 363-9694
    Facsimile: (214) 242-2432

    ATTORNEYS    FOR    DEFENDANT
    WEATHERFORD    INTERNATIONAL,
    INC.

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 27, 2011, I emailed Roger Fulghum, counsel for HES, and told him that Weatherford wished to move for leave to file a Supplemental Patent Invalidity Contention and inquired if their clients wished to oppose this request. On February 3, 2011, HES's counsel emailed me back and said HES does not oppose the motion to supplement.

*/s/ Stephen L. Lundwall*

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 7th day of February, 2011, with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served by U.S. First Class Mail on this same date.

Maria Wyckoff Boyce – maria.boyce@bakerbotts.com
Roger Fulghum – roger.fulghum@bakerbotts.com
Amy Pharr Hefley – amy.hefley@bakerbotts.com
BAKER BOTTS
One Shell Plaza
910 Louisiana St., Suite 3000
Houston, Texas 77002

David M. Genender – david.genender@bakerbotts.com
BAKER BOTTS LLP
2001 Ross Ave., Suite 600
Dallas, Texas 75201

John F. Booth – jbooth@ipoftexas.com
CRUTSINGER & BOOTH
1601 Elm Street, Suite 1950
Dallas, Texas 75201

David R. Cohen – david.cohen@klgates.com
Thomas J. Smith – thomas.smith@klgates.com
KIRKPATRICK & LOCKHART PRESTON
 GATES ELLIS LLP
535 Smithfield Street
Pittsburgh, PA 15222

*/s/ Stephen H. Cagle*