ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 17 2012

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| HALLIBURTON ENERGY SERVICES, INC., | § § § |
| Plaintiff, | § § |
| v. | § § Civil Action No. 3:10-CV-2595-N § |
| WEATHERFORD INTERNATIONAL, INC., | § § § |
| Defendant. | § § |

**COURT'S CHARGE TO THE JURY**

MEMBERS OF THE JURY:

Now that you have heard all of the evidence, it becomes my duty to give you the instructions of the Court concerning the law applicable to this case.

It is your duty as jurors to follow the law as I explain it to you and to apply that law to the facts as you find them from the evidence in the case. You are not to single out one instruction as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in these instructions, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

Do not let bias, prejudice, or sympathy play any part in your deliberations. This case should be considered and decided by you as an action between persons of equal standing in the community and holding the same or similar stations in life. The law does not give special treatment to any person. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. Our system of law does not permit jurors to be governed by prejudice, sympathy, or public opinion. The parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated in these instructions, and reach a just verdict regardless of the consequences.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

As stated earlier, it is your duty to determine the facts, and in so doing you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses, the exhibits admitted in the record, and the stipulated facts. Stipulated facts must be regarded as proven facts. The term "evidence" does not include anything that I have instructed you to disregard.

Remember that the lawyers' statements, objections, or arguments – whether made during the trial or during their opening and closing statements – are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case and, in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice. However, it is your own recollection and

interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you. If an attorney's question assumes that some fact is true and the witness did not agree with that assumption, the question itself is not evidence that the assumed fact is true. You should not consider or be influenced by the fact that during the trial of this case, counsel have made objections to the testimony, as it is their duty to do so, and it is the duty of the Court to rule on those objections in accordance with the law.

You are not bound by any opinion that you might think I have concerning the facts of this case, and if I have in any way said or done anything that leads you to believe that I have any opinion about the facts in this case, you are instructed to disregard it. Further, nothing in these instructions to you is intended to suggest what verdict I think you should find.

Although you should consider only the evidence in the case, you are permitted to draw any reasonable inferences from the testimony and exhibits that you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts established by the evidence in the case.

You should not be concerned about whether the evidence is direct or circumstantial. "Direct evidence" exists when the evidence directly establishes the facts that a party asserts to be true, such as by an eyewitness or in a document. "Circumstantial evidence" is proof of a chain of facts and circumstances that suggests a conclusion that an essential fact does actually exist, although not directly proving the existence of the essential fact. The law

makes no distinction between the weight you may give to either direct or circumstantial evidence.

Now, I have said that you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or believability of each witness and the weight or significance to be given to the witness's testimony. In weighing the testimony of a witness, you should consider the witness's relationship to a particular party; the witness's interest, if any, in the outcome of the case; the witness's manner of testifying; the witness's opportunity to observe or acquire knowledge concerning the facts about which the witness testified; the witness's candor, fairness, and intelligence; and the extent to which the witness's testimony has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness, in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

A witness may be "impeached" or discredited by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something, or failed to say or do something, that is inconsistent with the witness's present testimony. If you believe that any witness has been

so impeached, it is your exclusive right to give the testimony of that witness whatever credibility or weight, if any, as you think it deserves.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as the witness remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only an unimportant detail.

Unless you are instructed otherwise, the Plaintiff has the burden of proving each essential element of its theory of recovery by a preponderance of the evidence.   A preponderance of the evidence means sufficient evidence that, when considered and compared to the opposing evidence, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true.   To establish a contention by a preponderance of the evidence merely means to prove that the contention is more likely true than not true.   If the proof fails to establish any essential part of a party's theory of recovery by a preponderance of the evidence, you should find for the opposing party on that claim.

Weatherford must prove invalidity by clear and convincing evidence.   Halliburton must prove willfulness by clear and convincing evidence.   This is a higher standard than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

Clear and convincing evidence is evidence that shows it is highly probable that the contention is true.

In determining whether any fact in issue has been proved by a preponderance of the evidence or clear and convincing evidence, you may consider the testimony of all the witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have produced them.

Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations.

The acts of a corporation include the actions of its employees or agents acting within the course and scope of their employment or agency.

## DEFINITIONS

"Halliburton" – Plaintiff Halliburton Energy Services, Inc.

"Weatherford" – Defendant Weatherford International, Inc.

"'540 Patent" – United States Patent 5,224,540.

"PTO" – the United States Patent and Trademark Office.

"Application" – the initial papers filed by the applicant in the PTO.

"Claims" – the numbered sentences appearing at the end of a patent or reexamination certificate that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

"File wrapper" – see "prosecution history" below.

"Office action" – communication from the patent examiner regarding the specification (see definition below) and/or the claims in the patent application.

"Ordinary skill in the art" – the level of experience, education, and/or training generally possessed by those individuals who work in the area of the invention at the time of the invention.

"Patent Examiners" – personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

"Prior art" – knowledge that is available to the public either prior to the priority date of the '540 Patent or more than one year prior to the filing date of the application.

"Prosecution history" – the written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent.

"References" – any item of prior art used to determine patentability.

"Specification" – the information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings. In the specification, the inventor describes the invention, how it works, and how to make and use it. The specification must describe the invention in sufficient detail to enable others

skilled in the art to practice the invention and must describe what the inventor believed at the time of filing to be the best way of making his or her invention.

Before you decide whether Weatherford has infringed the claims of Halliburton's patent or whether any claims in Halliburton's patent are invalid, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The patent claims involved here are claims 3, 4, 5, 46, and 75. The claims are intended to define, in words, the boundaries of the invention. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

"Slips" – tapered wedge-shaped structures arranged around the surface of the mandrel oriented longitudinally along the axis of the mandrel, which may optionally have teeth or insets molded into the outer face of the slips toward the end away from the slip support.

"Slip support" – a cylindrical structure around the outer surface of the mandrel on the opposite side of the slips from the slip wedge.

"Slip wedge" – a wedge-shaped structure around circumference of the mandrel on the opposite side of the slips from the slip supports, and adjacent to the slips, where the thin end of the wedge is toward the slips and relatively flush with the surface of the mandrel, and the thick end is away from the slips, and which can be formed by a single tapered cylinder around the mandrel.

"Sleeve" – tube.

"Disposed on the mandrel" – to place or set in a particular order directly in contact with the mandrel.

"Set position" – with respect to slip means, the position of the slip means when it grippingly engages the well bore, and, with respect to packing means, the position of the packing means when it sealingly engages the well bore.

Some terms used in claims of the '540 Patent are in a special form called a "means-plus-function"clause. This type of clause requires a special interpretation. Those words do not cover all possible means that perform the recited function, but cover only the structure described in the patent specification and drawings that performs the function or an equivalent of that structure. You must use my interpretation of the means-plus-function element in your deliberations regarding infringement and validity.

A.     "slip means"

The function is:

1.     not grippingly engage the well bore when in the initial position;

2.     a setting action; and

3.      grippingly engage the well bore when in the set position.

The structure is:

1.      a slip wedge positioned around the central mandrel;

2.      a plurality of slips disposed in an initial position around the mandrel;

3.      retaining means for holding the slips in the initial position; and

4.      a slip support on the opposite side of the slips from the wedge.

The requirement of "slip means being at least partially made of a non-metallic material" is satisfied if any part of the slip means, as previously defined, is made of non-metallic material.

B.      "packing means"

The function is: sealingly engaging said well bore when in a set position.

The structure is: the pair of end packer elements (40) and center packing element (42), as seen in Figures 2, 3A, 4A, 5A, 6A, and 7 of the '540 Patent.

C.      "retaining means"

The function is: holding said slips in an initial position.

The structure is: retaining band, retaining rings, including integrally formed rings, and shear pins.

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

## PRIOR ART

Prior art includes any of the following items received into evidence during trial:

1.      any product that was publicly known or used by others in the United States before the patented invention was made;

2.      patents that issued more than one year before the filing date of the patent, or before the invention was made;

3.      publications having a date more than one year before the filing date of the patent, or before the invention was made; or

4.      any product that was in public use or on sale in the United States more than one year before the patent was filed.

In this case, Weatherford contends that the following items are prior art:

1.      1928 Fisher Patent 1,684,266

2.      1936 Armentrout Patent 2,043,255

3.      1938 E.P. Halliburton Patent 2,138,156

4.      1939 Hall Patent 2,160,804

5.      1967 Current Patent 3,298,440

6.      1968 Current Patent 3,371,716

7.      1968 Baker Oil Tools, Special Products Manual and the World Oil magazine publication

8.      1970 Scott Patent 3,526,277

9.      1970s Halliburton Cementing Plugs

10.     1975 Pitts Patent 3,910,348

12.     1981 Halliburton EZ Drill Manual

13.     1985 Halliburton Sales Catalog disclosing the EZ Drill tools

14.     1986 Baldridge Patent 4,624,316

15.     1987 Sukup Patent 4,708,202

16.     1987 Stepp Patent 4,712,619

17.     1989 Freeman Patent 4,836,279

18.     1989 Watson Patent 4,858,687

**INFRINGEMENT**

QUESTION NO. 1:

Did Weatherford infringe the '540 Patent?

Answer "yes" or "no" for each listed claim:

a.    claim 3        _____YES_____

b.    claim 4        _____YES_____

c.    claim 5        _____YES_____

d.    claim 46       _____YES_____

e.    claim 75       _____YES_____

INSTRUCTIONS FOR QUESTION NO. 1:

I will now instruct you as to the rules you must follow when deciding whether Halliburton has proven that Weatherford infringed any of the claims of the '540 Patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, Halliburton alleges that Weatherford's FracGuard product infringes claims 3, 4, 5, 46, and 75 of Halliburton's '540 Patent.

You have heard evidence about both Halliburton's commercial product and Weatherford's accused product. However, in deciding the issue of infringement you may not compare Weatherford's accused product to Halliburton's commercial product. Rather, you

COURT'S CHARGE – PAGE 13

must compare Weatherford's accused product to the claims of the '540 Patent when making your decision regarding infringement. Moreover, allegations of copying are of no import on the question of whether the claims of an issued patent have been infringed (either literally or under the doctrine of equivalents) because you must compare the accused devices not with products made by Halliburton, but with the claims of the '540 Patent as I have construed them for you.

A patent may be infringed directly or indirectly. Direct infringement results if the accused product is covered by at least one claim of the patent.

In this case, Halliburton asserts that Weatherford has directly infringed the patent. Weatherford would be liable for directly infringing Halliburton's patent if you find that Halliburton has proven that it is more likely than not that Weatherford has made, used, offered to sell, or sold the invention defined in at least one claim of Halliburton's patent.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

To determine literal infringement, you must compare the accused product with each claim that Halliburton asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if Weatherford's product includes each and every element in that patent claim. If Weatherford's product does not contain one or more elements recited in a claim, Weatherford does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually.

The accused product should be compared to the invention described in each patent claim it is alleged to infringe, not to Halliburton's preferred or commercial embodiment of the claimed invention. The same element of the accused product may satisfy more than one element of a claim.

As I have previously instructed you, the disputed claims of the '540 Patent contain means-plus-function clauses. To show infringement, Halliburton must prove that it is more likely than not that the part of Weatherford's product that performs the designated function previously identified in my instructions is identical to, or equivalent to, the structure previously identified in my instructions described in the specification for performing the identical function.

In deciding whether Halliburton has proven that Weatherford's product includes structure covered by a means-plus-function requirement, you must first decide whether the product has any structure that performs the function I just described to you. If not, the claim containing that means-plus-function requirement is not infringed.

If you find that Weatherford's accused product performs the claimed function, you must next identify the structure in Weatherford's accused product that performs this function. After identifying that structure, you must then determine whether Halliburton has shown that that structure is either identical to, or equivalent to, any structure disclosed in the patent specification for performing the designated function. If they are the same or equivalent, the

means-plus-function requirement is satisfied by that structure of the accused product. If all the other requirements of the claim are satisfied by structures found in the accused product, the accused product infringes the claim.

Whether the structure of the accused product is equivalent to a structure described in the patent specification is decided from the perspective of a person of ordinary skill in the art. If a person of ordinary skill in the art would consider the differences between the structure found in Weatherford's product and a structure described in the patent specification to be insubstantial, the structures are equivalent.

There are two different types of claims in the patent. One type of claim is called an independent claim. The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, claim 3 is an independent claim and recites several elements. Claim 4 is a dependent claim that refers to claim 3 and includes an additional element. Claim 4 adds that additional element that the slip support be made of a non-metallic material. Claim 4 requires each of the elements of independent claim 3, as well as the additional element identified in claim 4 itself.

To establish literal infringement of claims 4, 5, 46, or 75, Halliburton must show that it is more likely than not that the Weatherford's product includes each and every element of claims 4, 5, 46, or 75.

If you find that the claim 3 from which claims 4, 5, 46, or 75 depend is not literally infringed, then you cannot find that claims 4, 5, 46, or 75 are literally infringed.

The preamble to claim 3 uses the term "comprising". The word "comprising" means "including the following but not excluding others."

If you find that Weatherford's product includes all of the elements in claims 3, 4, 5, 46, or 75, the fact that Weatherford's product might include additional components would not avoid literal infringement of a claim that uses "comprising" language.

If you decide that Weatherford's product does not literally infringe an asserted patent claim, you must then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the product is missing an identical or equivalent part to even one part of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the

requirement were not substantial as of the time of the alleged infringement. One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. The same element of the accused product may satisfy more than one element of a claim.

**INVALIDITY**

QUESTION NO. 2:

Are the claims of the '540 Patent invalid?

Answer "yes" or "no" for each claim:

a.    claim 3      _____*No*_____

b.    claim 4      _____*No*_____

c.    claim 5      _____*Yes*_____

d.    claim 46     _____~~~~ *No*_____

e.    claim 75     _____*No*_____

INSTRUCTIONS FOR QUESTION NO.2:

Weatherford contends that the asserted claims of the '540 Patent are invalid. Weatherford must prove by clear and convincing evidence that each claim is invalid. Evidence supporting an invalidity defense that was not considered by the PTO, if any, may carry more weight than evidence previously considered by the PTO.

Claims of an issued patent may be found to be invalid.  Thus, you must determine whether each of Halliburton's claims is invalid.

Weatherford contends that all of the asserted patent claims are invalid for the following reasons:

1.    anticipation

2.    obviousness

3.    enablement

4.    written description

I will now instruct you in more detail why Weatherford alleges that the asserted claims of the '540 Patent are invalid.

## A. Anticipation

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, Weatherford must prove with clear and convincing evidence that the claimed invention is not new.

In this case, Weatherford contends that claims 3 and 5 of the '540 Patent are anticipated. To anticipate a claim, each and every element in the claim must be present in a single item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular reference.

Weatherford contends that the following claims of the '540 Patent were anticipated because the invention defined in those claims were patented by a third party more than one year before Halliburton filed its United States patent application on April 26, 1990:

claim 3 – U.S. Patent No. 3,298,440 (Current I), issued January 17, 1967

claims 3 & 5 – U.S. Patent No. 3,371,716 (Current II), issued March 5, 1968

A patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country more than one year before Halliburton filed its United States patent application.

To show anticipation of the patented invention, Weatherford must show by clear and convincing evidence that before April 26, 1989, Current patented an invention that included all of the elements of claim 3 and/or 5 of the '540 Patent.

### B. Obviousness

Weatherford also contends that claims of the '540 Patent are invalid because the claimed invention is "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.

The following factors must be evaluated to determine whether Weatherford has established that the claimed inventions are obvious:

1.      the scope and content of the prior art relied upon by Weatherford;

2.      the difference or differences, if any, between each claim of the '540 Patent that Weatherford contends is obvious and the prior art;

3.      the level of ordinary skill in the art at the time the invention of the '540 Patent was made; and

4.      additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

Weatherford must prove obviousness by clear and convincing evidence.

I will now explain each of the four factors in more detail.

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes.

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements

yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that Weatherford contends is obvious.

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the pertinent art field. The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.

The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1.      the level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

2.      the types of problems encountered in the art at the time of the invention; and

3.      the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

1.      Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.      Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

3.      Did others try, but fail, to solve the problem solved by the claimed invention?

4.      Did others copy the claimed invention?

COURT'S CHARGE – PAGE 24

5.      Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.      Did others in the field, or Weatherford, praise the claimed invention or express surprise at the making of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

### C. Enablement

The written description set forth in a patent must disclose sufficient information to enable or teach one skilled in the field of the invention to make and use the full scope of the claimed invention. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

A patent is enabling if its disclosure is sufficient to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation.   In considering whether the written description of a patent satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.   Weatherford bears the burden of establishing lack of enablement by clear and convincing evidence.

Weatherford contends that claims 3, 4, 5, 46, and 75 of the '540 Patent are invalid for lack of enablement. The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not

meet the enablement requirement. Factors that you may consider in determining whether the written description would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art and (8) the breadth of the claims.

### D. Written Description

A patent must contain a written description of the product claimed in the patent. The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed, including its predecessor applications, would recognize that the patent application described the invention as finally claimed in the patent. It is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the full scope of the invention.

Weatherford contends that the claims of the '540 Patent are invalid for failure to satisfy the written description requirement. Weatherford bears the burden of establishing lack of written description by clear and convincing evidence.

If you find that Weatherford has proved that it is highly probable that the '540 Patent does not contain a written description of the invention covered by any of these claims, then you must find that the claim is invalid.

**WILLFULNESS**

If your answer to Question No. 1 is "yes" and your answer to Question No. 2 is "no" for any claim, then answer the following question. Otherwise do not answer the following question.

QUESTION NO. 3:

Was the infringement found in Question No. 1 willful?

Answer "yes" or "no":

_____ *No* _____

INSTRUCTIONS FOR QUESTION NO. 3:

Willfulness must be proven by clear and convincing evidence showing that:

1.    Weatherford was aware of Halliburton's patent,

2.    Weatherford acted despite an objectively high likelihood that its actions infringed a valid patent, and

3.    This objectively high likelihood of infringement was either known or so obvious that it should have been known to Weatherford.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to whether Weatherford intentionally copied the claimed invention or a product covered by Halliburton's patent, whether Weatherford relied on competent legal advice, and whether Weatherford presented a substantial defense to infringement, including the defense that the patent is invalid.

## DAMAGES

If you find that the accused device infringes any of the claims of the '540 Patent, and that those claims are not invalid, you must determine the amount of damages to be awarded Halliburton for the infringement. On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations.

If you need to determine damages, the amount of those damages must be adequate to compensate Halliburton for the infringement. Your damage award should put Halliburton in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty. You may not add anything to the amount of damages to punish the accused infringer or to set an example.

Halliburton must prove each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Halliburton.

If your answer to Question No. 1 is "yes" and your answer to Question No. 2 is "no" for any claim, then answer the following question. Otherwise do not answer the following question.

QUESTION NO. 4:

What sum of money, if paid now in cash, would fairly and reasonably compensate Halliburton for Weatherford's infringement of any claim of the '540 Patent for which your answer to Question No. 1 is "yes" and your answer to Question No. 2 is "no"?

Consider the following elements of damages, if any, and no other. Do not include interest on any amount of damages you may find.

Answer in dollars and cents for damages, if any, for:

a.     lost profits from plug sales

_____ 2,222,500

b.     lost profits from collateral sales

_____ 66,675.00

c.     lost profits from price erosion

_____ 0

d.     lost profits from accelerated market entry

_____ 0

e.     reasonable royalty

_____ 32,802,480

<u>INSTRUCTIONS FOR QUESTION NO. 4</u>:

If you find claim 3 is infringed and not invalid, you should assess damages beginning on December 21, 2001 and ending on July 6, 2010, except for accelerated market entry damages. If you find only claims 4, 5, 46 and/or 75 are infringed and not invalid, you should assess damages beginning November 27, 2007 and ending on July 6, 2010, except for accelerated market entry damages. You should assess accelerated market entry damages beginning on July 7, 2010 and ending December 31, 2012..

There are two types of damages for patent infringement. The first type of patent damages is lost profits. Briefly, lost profits damages compensate the patent owner for the additional profits that it would have made if the accused infringer had not infringed. You may hear this referred to as the "but for" test. The second type of patent damages is called reasonable royalty. Generally, the patent laws define a reasonable royalty as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover for infringement.

### A. Lost Profits

Halliburton is seeking its lost profits as its patent damages.

Halliburton must prove the amount of its lost profits. To recover lost profits for some or all of the infringing sales, Halliburton must show by a preponderance of evidence that, but for the infringement, Halliburton would have made profits. The lost profits may be profits that would have resulted from Plaintiff's sales or a portion of them that Weatherford made of

FracGuard products. Thus, part of your job is to determine what the customers who purchased the FracGuard products from Weatherford would have done if the alleged infringement had not occurred. The profits I have been referring to are the profits allegedly lost by Halliburton, not the profits, if any, made by Weatherford.

You may infer that Halliburton has proven its lost profits if you find that Halliburton has proven each of the following factors by a preponderance of the evidence:

1.     the demand for the patented product,

2.     absence of acceptable non-infringing substitutes,

3.     that Halliburton had the manufacturing and marketing capacity to make the infringing sales actually made by Weatherford, and

4.     the amount of profit that Halliburton would have made but for Weatherford's sales.

I will now explain each of these factors.

Demand for the patented product can be proven by significant sales of Halliburton's patented product. Demand for the patented product can also be proven by significant sales of Weatherford's product containing the patented features. However, if you find that Weatherford generated new or different markets by sales or marketing efforts because of features other than those claimed by Halliburton, the sales of Weatherford's product cannot establish a demand for the patented product.

In order to be an acceptable substitute, the product must have one or more of the advantages of the patented invention that were important to customers. If, however, the

realities of the marketplace are that competitors other than Halliburton would likely have captured some or all of the sales made by the infringer, even despite a difference in the products, then Halliburton is not entitled to lost profits on those sales. An acceptable non-infringing substitute must be a product that does not infringe the patent. A product does not infringe a patent when it does not include all the features required by the patent. An acceptable non-infringing substitute is available if, during the damages period, a competitor or Weatherford had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell such substitute instead of its infringing sales at the time those infringing sales were made. If you determine that Weatherford's customers would just as likely have purchased a non-infringing acceptable product, then Halliburton has not shown it lost that sale but for Weatherford's sales

In order to assess whether there is an absence of acceptable non-infringing substitutes, you must consider whether non-infringing substitutes existed that were acceptable to the specific purchasers of the infringing products, not "purchasers" generally. The test is whether purchasers of Weatherford's product were motivated to make their purchase by features of Weatherford's product that were attributable to the claimed invention. If so, non-infringing products without those features would not be "acceptable non-infringing substitutes," even if they otherwise competed in the marketplace with the patented and Weatherford's products.

Halliburton is only entitled to lost profits for sales it could have actually made. You should consider whether Halliburton has proven that it had the manufacturing capacity and the marketing capability to make the sales it says it lost. Halliburton must prove that it was

more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for the infringement. Halliburton also must prove that it had the capability to market and sell the additional patented products.

Halliburton may calculate its lost profits on lost sales by computing the lost revenue for its patented product and subtracting from that figure the amount of additional costs or expenses that it would have incurred in making those lost sales, including but not limited to cost of goods, sales costs, packaging, shipping, etc. Certain fixed costs such as taxes, insurance, rent and administrative overhead may not vary with increases in production or scale. These are called fixed costs. Any costs, which do not vary with increased production or scale, should not be subtracted from the lost revenue when determining damages. Thus, in determining Halliburton's lost profits, you are not to subtract from its lost revenue the amount of any fixed costs. The amount of lost profits cannot be speculative but it need not be proved with unerring certainty.

It is not necessary for Halliburton to prove that Halliburton and Weatherford were the only two suppliers in the market for Halliburton to demonstrate entitlement to lost profits. If the realities of the marketplace are such that "acceptable non-infringing substitutes" were available from suppliers who would have made only some, but not all, of the sales that were made by Weatherford, then Halliburton may be entitled to lost profits on a portion of the infringing sales. The burden is on Halliburton, however, to show to a reasonable probability that it would have sold that portion if Weatherford's product had never existed. By the same token, even if you find that Halliburton and Weatherford were the only two suppliers of

products having the advantages of the patented product, it does not necessarily mean that Halliburton would have made all Weatherford's sales. The burden is on Halliburton to show that its product competed in the same market with the Weatherford's product and that it would have made those sales if the infringement had not occurred.

In this case, Halliburton contends that the patented product is ordinarily sold along with wire line adapter kits. To recover lost profits on sales of such collateral products, Halliburton must prove two things. First, that it is more likely than not that Halliburton would have sold the collateral products but for the infringement. Second, a collateral product and the patented product together must be analogous to components of a single assembly or parts of a complete machine, or they must constitute a functional unit. Damages for lost profits on lost collateral sales, if any, are calculated in the same manner as I just described for calculating lost profits on the patented product.

Halliburton is entitled to recover additional damages if it can show to a reasonable probability that, if there had been no infringement, Halliburton would not have had to lower its prices. In that case, you may also award as additional damages the amount represented by the difference between the amount of profits that Halliburton would have made by selling its product at the higher price and the amount of profits Halliburton actually made by selling its product at the lower price that Halliburton actually charged for its patented product. This type of damage is referred to as price erosion damage. If you find that Halliburton suffered price erosion damages, you may also use the higher price in determining Halliburton's lost profits from sales lost because of the infringement. In calculating Halliburton's total losses from

price erosion, you must take into account any decrease in sales that might have occurred if Halliburton charged a higher price than it did. This is called price elasticity. In order to award lost profits based on price erosion, it is not required that Halliburton knew that the competing product infringed the patent, if Halliburton reduced its price to meet Weatherford's competition.

Halliburton contends that it was damaged by Weatherford's entry into the market prior to the expiration of the '540 Patent on July 6, 2010. Halliburton contends that in the absence of Weatherford's infringement, Weatherford would have begun selling its accused products on July 7, 2010, rather than beginning in 2001, and that, as a result of Weatherford's infringement, Weatherford had a higher market share when the '540 Patent expired on July 6, 2010 that it otherwise would have had if it had not infringed the '540 Patent. Halliburton seeks as damages the profits it lost as a result of Weatherford's early entry into the market. This type of damages is referred to as accelerated market entry damages.

### B. Reasonable Royalty

If you find that Halliburton has not proven its claim for lost profits, or if you find that Halliburton has proven its claim for lost profits for only a portion of the infringing sales, you must then determine what a reasonable royalty would be for that portion of Halliburton's sales for which you have not awarded lost profit damages. The patent law specifically provides that the amount of damages that Weatherford must pay Halliburton for infringing Halliburton's patent may not be less than a reasonable royalty for the use that Weatherford made of Halliburton's invention. A reasonable royalty is not necessarily the actual measure of

damages, but is merely the floor below which damages should not fall. Halliburton is entitled to a reasonable royalty for all infringing sales for which it is not entitled to lost profits damages.

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a company in the position of Weatherford taking place just before the infringement began. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1.    Licenses or offers to license the patent at issue in this case

2.    Licenses involving comparable patents

3.    The licensing history of the parties

4.    Licensing practices in the relevant industry

5.    Whether the patent owner had an established policy of refusing to license the patent at issue

6.    The relationship between the patent owner and alleged infringer, including whether or not they were competitors

7.    The significance of the patented technology in promoting sales of the alleged infringer's products and earning it profit

COURT'S CHARGE – PAGE 37

8.    Alternatives to the patented technology and advantages provided by the patented technology relative to the alternatives

9.    The portion of the alleged infringer's profit that should be credited to the invention as distinguished from nonpatented features, improvements or contributions

10.    Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by Weatherford after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time. You may only consider this information, however, if it was foreseeable at the time that the infringement began.

## JURY DELIBERATION

The fact that I have given you in this charge instructions about a particular claim or defense, or that I have not so instructed you, should not be interpreted in any way as an indication that I believe a particular party should, or should not, prevail in this case.

Your verdict must be unanimous. It is your duty as jurors to consult one another and to deliberate with a view towards reaching an agreement. Each of you must decide the case for yourself, but only after an impartial consideration with each other of all the evidence in the case. In the course of your deliberations, do not hesitate to reexamine your own view and change your opinion if you are convinced it is erroneous. Do not, however, surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of other jurors or for the mere purpose of returning a verdict. Remember at all times you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

As soon as I finish reading this charge and the attorneys present their closing arguments, you will retire to the jury room. I will send to you exhibits that have been admitted into evidence. You will first select one member of the jury to act as presiding juror. The presiding juror will preside over your deliberations and will speak on your behalf here in court.

Do not deliberate unless all members of the jury are present in the jury room. For example, if one or more of you go to lunch together or are together outside the jury room, do not discuss the case.

When you have reached unanimous agreement as to your verdict, the presiding juror shall fill in your answers to the questions on a copy of the charge that I will provide to you for this purpose, shall date and sign the last page of that copy of the charge, and shall notify the court security officer that you have reached a verdict. The court security officer will deliver the verdict to me.

During your deliberations the Court will honor any reasonable work schedule you may set and will honor your reasonable requests regarding how frequently you wish to recess and for how long.

If, during your deliberations, you desire to communicate with me, your presiding juror should state your message or questions in writing, sign it, and pass the note to the court security officer, who will bring it to my attention. I will then respond as promptly as possible, either in writing or by asking you to return to the courtroom so that I can address you in person. If you do send a message or ask a question in which you indicate that you are divided, never state or specify your numerical division at the time.

SIGNED this ___/5___ day of February, 2012.

David C. Godbey
United States District Judge

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:10-CV-2595-N |
| WEATHERFORD INTERNATIONAL, INC., | § § § | |
| Defendant. | § § | |

## **VERDICT OF THE JURY**

We, the jury, have answered the above questions as indicated, and now return those

questions and answers to the Court as our verdict.

SIGNED this ___17___ day of February, 2012.


_____
PRESIDING JUROR